# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOHN W. MATHIEU SR.                                      CIVIL ACTION

VERSUS                                                  NO.  14-546

ROBERT C. TANNER, WARDEN                                 SECTION "J"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. STATE COURT PROCEDURAL BACKGROUND

The petitioner, John W. Mathieu Sr., is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On October 31, 2005, Mathieu was charged by bill of information in Jefferson Parish with one count of second degree kidnapping with a gun.[3] He was separately charged under a different case number with stalking and unlawful carrying of a weapon.[4] The stalking charge was dismissed by the district attorney on June 29, 2006.[5] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at the trial of the kidnapping and weapons charge in relevant part as follows:

> Terry Mathieu (hereafter "Ms. Mathieu") testified she is the defendant's ex-wife. She said they were married for twenty-three years, but separated on August 4, 2004 and were divorced in December 2004. According to Ms. Mathieu, from August 2004 until the date of the incident on July 16, 2005, the defendant constantly called her on the phone, sent her letters, and went to her place of employment, the Walgreens store at 678 Terry Parkway in Gretna, Louisiana. Eventually she stopped all contact.
>
> On the date of the incident, Ms. Mathieu was working the 8:30 a.m.-5:00 p.m. shift, the same as she worked during her marriage to the defendant. After work, she walked to her vehicle, a Jeep Cherokee, carrying two bags. After she opened the vehicle's door, she was (sic) felt she was being pushed. She turned and saw it was the defendant. Instinctively she put her hand on the horn and blew it to get attention. She felt pressure on her lower back. The defendant told her,

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 3 of 6, Bill of Information, 3/25/10 (as amended 10/7/10, 10/20/10).

[4]The court has not been provided with this record although the record from the kidnapping case is sufficient to address Mathieu's claims.

[5]St. Rec. Vol. 10 of 16, Sentencing Transcript, p. 10, 6/29/06.

"Don't do anything stupid, I have a gun." He pushed her in the car and she saw he had a gun in his hand. It was "directed in [her] direction," but not pointed at her.

She denied that she got into the car voluntarily or that she voluntarily gave the defendant her car keys. Once she was in the car, she was crying and still trying to get attention from people in the parking lot. The defendant told her, "[S]ettle down. ... I'm not going to hurt you. I just need to talk to you. You pushed me to this. You wouldn't talk to me." Ms. Mathieu described the defendant as nervous and sweaty. He drove them away from the parking lot.

Ms. Mathieu dialed 911 on her cell phone so that the emergency operator could listen to what was going on. As the defendant drove, he continued to shake the gun at her, telling her to "calm down, don't draw attention." During the recorded 911 conversation, the defendant threatened to kill himself. The defendant said he had pills that he was going to take to do himself in, and said he wanted Ms. Mathieu to stay with him until the end. When Ms. Mathieu asked the defendant why he brought a gun, he did not reply. Ms. Mathieu testified that the defendant never knew their conversation was being recorded.[6]

With Ms. Mathieu in the vehicle, the defendant drove to Kiln, Mississippi. During the drive, as dusk was falling, Ms. Mathieu ended the 911 call because she was afraid that the defendant would see the light emanating from her cell phone as it got dark. Later, her cell phone rang and Ms. Mathieu answered it, at which point the defendant took the phone away from her.

During the course of the trip, the defendant "screamed" at her, accusing her of having sex with different men, breaking up their family, and taking everything away from him. He lay the gun in his lap, but occasionally picked the gun up as he was speaking and shook it in her direction.

Ms. Mathieu testified she was in the car with the defendant and the gun for three to four hours. They ended up at a rest stop in Kiln, Mississippi. After they arrived at the rest area, the defendant started screaming at her again, making accusations, and again saying he was going to kill himself. According to Ms. Mathieu, she did not have an opportunity to escape. At some point the defendant stopped to get gas, but Ms. Mathieu could not recall where, or whether it was before or after they reached Kiln. He told her not to do "anything stupid" while he went in to pay for the gas. He put the gun in the front of his pants. She saw that while he was paying for the gas, he continued to watch her. She was "scared" and didn't know if he would start shooting.

---

[6]"2. Ms. Mathieu identified the 911 tape in court, and it was played for the jury. A review of the 911 tape played for the jury reveals that Ms. Mathieu cried throughout most of the conversation with the defendant. During that conversation, Ms. Mathieu asked the defendant why he pulled a gun on her."

Later, the defendant drove Ms. Mathieu back to Gretna. She said that throughout the three or four hour trip with the defendant, she feared she would be killed. The defendant put a microcassette tape in the vehicle's console that the defendant claimed would explain everything. Ms. Mathieu testified that when the defendant turned off the car engine, she jumped out and ran because she was afraid he was going to kill her. She ran to a nearby McDonald's restaurant; when she got there she turned and saw the defendant walking down a side street. She locked herself in the restaurant's bathroom for a while. Later, she came out and looked around; after ascertaining the defendant was not around, she went to the pay phone and called her mother. The police eventually arrived at the restaurant and Ms. Mathieu's vehicle was towed to the detective bureau.

Ms. Mathieu said that after she fled the vehicle the defendant still had her keys to it, as well as her cell phone. She identified the defendant in open court as the man who took her at gunpoint on July 16, 2005 from Walgreens.

The defendant himself conducted the cross-examination of Ms. Mathieu. In response to his questioning, she admitted that prior to July 16, 2005 she was aware that he carried around a gun, and on July 16, he did not make any threats to her and she was not physically harmed, except for being pushed. She said he stuck the gun in her back.

Linh Pham, Ms. Mathieu's co-worker, testified she was employed at the Walgreens store located at 678 Terry Parkway on the date of the incident. Pham had just arrived in the Walgreens parking lot at 5:00 p.m. to start her shift, when she saw a man following Ms. Mathieu as Ms. Mathieu left the store. As Ms. Mathieu opened her car door, the man pushed her into the vehicle. Pham testified she could tell from Ms. Mathieu's expression that she was terrified. It appeared to Pham that Ms. Mathieu was probably screaming and trying to tell her something was wrong.

Pham said that as she walked by Ms. Mathieu's vehicle, the defendant looked at her. Pham saw the defendant's full face, because the defendant stared directly into her face. The defendant drove away in the car, despite Pham's efforts to stop him. Pham described the five-minute incident as terrifying. She knew that something was terribly wrong. Pham told the manager that someone was "probably trying to kidnap somebody outside," and the manager called the police. Pham said she identified the man whom she saw push Ms. Mathieu into her vehicle and drive away in a photographic lineup.

Jane Trucksis, a Walgreens employee, testified that she called 911 on the date of the incident because a customer and Pham told her that Ms. Mathieu had been kidnapped. Trucksis identified her voice on the 911 tape played in court. On cross examination conducted by the defendant, Trucksis said she identified the defendant as the abductor in her 911 call because Pham told her it was him.

Detective Jeffery Rodrigue of the Jefferson Parish Sheriff's Office testified he responded to a call received from a Walgreens employee reporting that a co-worker named Terry Mathieu had been forced into a vehicle by an unknown Hispanic male. The caller thought Ms. Mathieu was in danger, because she screamed for help and blew the vehicle's horn to get the attention of people in the area.

When Detective Rodrigue arrived at the scene on Terry Parkway, he learned that several phone calls had come into headquarters from a phone number they later learned was Terry Mathieu's, on which the operator could hear a woman screaming hysterically and asking for help because someone was pointing a gun at her. In the course of the investigation, Detective Rodrigue spoke to Pham and to Troy Barrios, Ms. Mathieu's boyfriend, who had been called by someone at Walgreens. Detective Rodrigue learned that Ms. Mathieu and the defendant had an extensive history of emotional and violent abuse that included several incidents in which Ms. Mathieu was held against her will. Detective Rodrigue obtained an arrest warrant for the defendant.

Detective Rodrigue also learned that Ms. Mathieu had been driving a maroon Jeep Cherokee on the day of the incident. The vehicle was later located at the Home Depot on Stumpf Boulevard. Subsequently, Ms. Mathieu informed the police that the vehicle contained a cassette tape made by the defendant, which the defendant had directed Ms. Mathieu to listen to "after all this is over." The cassette tape was recovered from the Jeep's console. It was reviewed and found to be a message from the defendant detailing his intentions to commit suicide because of his separation from Ms. Mathieu.

Deputy Mark Layrisson of the Jefferson Parish Sheriff's Office testified that photocopies of the defendant's picture were given to local motels and hotels, as part of the investigation. The Sheriff's Office subsequently received a call from the Luxury Inn in Marrero reporting that there was a guest matching the suspect's description. When deputies arrived, they observed the defendant through a window. The deputies approached him, identified him by his driver's license, and placed him into custody. A search of the defendant revealed that he had a firearm. Deputy Layrisson identified the defendant in open court as the man that he had placed into custody that day.

Detective Sergeant Kelly Jones of the Jefferson Parish Sheriff's office testified that she obtained a statement from the defendant. Detective Jones said the defendant's statement did not match the physical evidence obtained in the investigation.

In the defendant's statement, played for the jury, the defendant claimed that Ms. Mathieu started screaming after he startled her, as she opened the door of her vehicle. The defendant claimed that Ms. Mathieu jumped all the way into the passenger side of the vehicle over the center console and then she threw her

keys at him. According to the defendant, Ms. Mathieu told him that she could not drive, because she was upset. The defendant claimed that he would have sat in the vehicle and spoken to Ms. Mathieu in Walgreens parking lot, but that she told him to drive.

The defendant said he got behind the wheel and drove toward Mississippi, while he spent the next thirty minutes trying to calm Ms. Mathieu down and assuring her she was not in danger. The defendant claimed Ms. Mathieu left with him voluntarily. The defendant said he took Ms. Mathieu to a Mississippi rest stop, where they talked. When they returned to Gretna, they parked at the Home Depot store on Stumpf Boulevard and talked again. The defendant said Ms. Mathieu then got out of the car and walked away, telling him to keep the Jeep. He claimed he called to Ms. Mathieu, telling her he still had her keys. Ms. Mathieu did not return, so he locked the vehicle's door. The defendant admitted seeing Ms. Mathieu run to McDonald's.

The defendant said he then bought a drink, sat in the park in Terrytown, and took some pills, which caused him to lose consciousness. He admitted, however, that he did not take the pills to kill himself. He said he only told Ms. Mathieu that he was going to take pills to kill himself because he was "messing with her." The defendant claimed the reason he still had Ms. Mathieu's cell phone when he was arrested was that Ms. Mathieu threw her cell phone at him during the incident, after he told her she could not call her son.

The defendant claimed that when he went to Walgreens that day, he did not have the nine millimeter semi-automatic gun later found on him during the search. He claimed that prior to going to Walgreens, he hid the gun under a concrete slab at the Terrytown Recreation Center tennis courts, and that he did not retrieve the gun until the next day. He said the gun belonged to his oldest son. He also said he never threatened Ms. Mathieu.

After the State completed presenting its case, the defendant rested his case without presenting any evidence.

(footnote in original) <u>State v. Mathieu</u>, 960 So.2d 296, 299-302 (La. App. 5th Cir. 2007);

State Record Volume 10 of 16, Louisiana Fifth Circuit Court of Appeal Opinion, 06-KA-946, pages 3-9, May 29, 2007.

Mathieu was tried before a jury on June 12 and 13, 2006, and found guilty as charged of second degree kidnapping.[7] The court also found him guilty of the misdemeanor weapons charge.[8]

The court denied Mathieu's motions for a new trial and post-verdict judgment of acquittal at a hearing on June 29, 2006.[9] After waiver of legal delays, the court sentenced Mathieu on the kidnapping conviction to 30 years in prison at hard labor with the first two years without benefit of parole, probation or suspension of sentence.[10] The court also sentenced him on the misdemeanor charge to a concurrent term of six months in prison.[11] The state trial court later denied Mathieu's motion to reconsider the kidnapping sentence and for release without bail pending appeal.[12] Shortly thereafter, Mathieu filed a motion to recuse the trial judge.[13] The motion was denied by another judge of the court on

---

[7]St. Rec. Vol. 8 of 16, Trial Minutes, 6/12/06; Trial Minutes, 6/13/06; St. Rec. Vol. 9 of 16, Trial Transcript, 6/13/06; Proffer Transcript, 6/12/06.

[8]St. Rec. Vol. 9 of 16, Trial Transcript, p. 181-82, 6/13/06;

[9]St. Rec. Vol. 8 of 16, Sentencing Minutes, 6/29/06; St. Rec. Vol. 9 of 16, Sentencing Transcript, 6/13/06.

[10]St. Rec. Vol. 8 of 16, Sentencing Minutes, 6/29/06; St. Rec. Vol. 10 of 16, Sentencing Transcript, 6/29/06.

[11]St. Rec. Vol. 10 of 16, Sentencing Transcript, p. 13, 6/29/06.

[12]St. Rec. Vol. 8 of 16, Minute Entry, 9/28/06; Motion to Reconsider Sentence, 7/12/06; St. Rec. Vol. 10 of 16, Hearing Transcript, 9/28/06.

[13]St. Rec. Vol. 8 of 16, Motion to Recuse, 10/17/06.

October 26, 2006.[14]  Mathieu's later-filed writ application seeking review of the denial of the motion to reconsider the sentence and for his release was denied by the Louisiana Fifth Circuit on December 14, 2006.[15]

On direct appeal of the kidnapping conviction to the Louisiana Fifth Circuit, Mathieu's appointed counsel asserted the following errors:[16] (1) The state trial court erred in permitting Mathieu to represent himself. (2) The state trial court imposed an excessive sentence. (3) Any errors patent on the face of the record were assigned as error.

On May 29, 2007, the Louisiana Fifth Circuit "conditionally affirm[ed]" Mathieu's conviction and sentence finding no merit in the latter two claims.[17] In addressing the first claim, the appellate court determined that the record failed to include documents and rulings necessary to confirm whether Mathieu's waiver of counsel was knowing and voluntary.  Under its conditional ruling, the matter was remanded to the state trial court for an evidentiary hearing to determine whether Mathieu made a clear and unequivocal request to represent himself and whether the court made sufficient inquiries into his competency in knowingly and voluntarily waiving counsel.  The court reserved

---

[14]St. Rec. Vol. 8 of 16, Trial Court Order, 10/26/06; Trial Court Order, 10/23/06.

[15]St. Rec. Vol. 10 of 16, 5th Cir. Order, 06-KH-934, 12/14/06.

[16]St. Rec. Vol. 9 of 16, Appeal Brief, 06-KA-0946, 1/11/07.

[17]Mathieu, 960 So.2d at 296; St. Rec. Vol. 10 of 16, 5th Cir. Opinion, 06-KA-946, 5/29/07.

Mathieu's right to appeal any such ruling. The Louisiana Supreme Court later denied Mathieu's writ application seeking review of the appellate court's conditional ruling.[18]

In the meantime, on remand, an evidentiary hearing was held on August 23, 2007, where Mathieu was represented by counsel, to determine the validity of the earlier decision to allow Mathieu to represent himself.[19] The court held that Mathieu had made a clear and unequivocal request to represent himself.

Subsequently, however, on August 27, 2007, the judge recused himself as a potential witness, and the matter was re-heard by a different judge on June 6, 2008.[20] Relying on the standards set forth in Faretta v. California, 422 U.S. 806 (1975), and related case law, the court held that each element of a valid and knowing waiver of counsel and a clear decision to self-represent were established by the record and transcripts of the various pretrial and trial proceedings.

Mathieu's appointed counsel appealed this ruling to the Louisiana Fifth Circuit asserting that it was error to permit Mathieu to represent himself.[21] The appellate court was dissatisfied with the evidentiary support and explanation of the state trial court's

---

[18]State ex rel. Mathieu v. State, 976 So.2d 714 (La. 2008); St. Rec. Vol. 13 of 16, La. S. Ct. Order, 2007-KO-1424, 2/1/08; La. S. Ct. Writ Application, 07-KO-1424, 7/11/07 (dated 6/10/07).

[19]St. Rec. Vol. 10 of 16, Hearing Transcript, 8/23/07.

[20]St. Rec. Vol. 10 of 16, Trial Court Order, 8/27/07; Trial Court Judgment, 6/6/08; Hearing Transcript, 6/6/08.

[21]St. Rec. Vol. 10 of 16, Appeal Brief, 08-KA-0747, 10/10/08.

ruling and found that the trial court had not answered the questions posed on remand. On January 27, 2009, the state Fifth Circuit again remanded the matter to the trial court to conduct another evidentiary hearing to determine whether Mathieu had made a clear and unequivocal request to represent himself and whether the court made sufficient inquiries into his competency in knowingly and voluntarily making the waiver of counsel, again reserving Mathieu's right to appeal the ruling.[22]

On remand, another evidentiary hearing was conducted on May 11, 2009, at which Mathieu was represented by counsel and the original trial judge was called to testify.[23] Based on the record, the testimony and the argument of counsel, the court stated that it "den[ied] his post conviction relief," although only the remand was before it at that time.[24]

Counsel then filed Mathieu's third appeal to the Louisiana Fifth Circuit, again arguing that Mathieu should not have been allowed to represent himself.[25] Mathieu also submitted a pro se brief asserting that his sentence was excessive, the state trial court abused its discretion in refusing to follow the sentencing guidelines and the appellate

---

[22]State v. Mathieu, 8 So.3d 631 (La. App. 5th Cir. 2009); St. Rec. Vol. 11 of 16, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-747, 1/27/09.

[23]St. Rec. Vol. 11 of 16, Hearing Transcript, 5/11/09.

[24]Id., at p. 56.

[25]St. Rec. Vol. 11 of 16, Appeal Brief, 09-KA-0631, 8/24/09.

court erred in affirming the sentence.[26]  Without ruling on the pro se issues, the Louisiana

Fifth Circuit reversed Mathieu's conviction and sentence on September 28, 2010, finding

that the record and the evidentiary hearing failed to establish waiver of counsel or a

sufficient inquiry into Mathieu's competence to do so by the trial court.[27]

On review of the State's related writ application, however, the Louisiana Supreme

Court found that the record as a whole supported the trial court's findings that Mathieu

made a knowing and voluntary waiver of his right to counsel by his actions and that he

had the capacity to do so voluntarily.[28]  Thus, on April 11, 2011, the supreme court

reversed the Louisiana Fifth Circuit and reinstated the conviction and sentence with

direction for the state trial court to execute the sentence.[29]

Mathieu's conviction and sentence became final ninety (90) days later, on

Monday, July 11, 2011,[30] when he did not file a writ application with the United States

Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for

---

[26]St. Rec. Vol. 11 of 16, Pro Se Brief, 09-KA-631, 1/10/10.

[27]State v. Mathieu, 49 So.3d 434 (La. App. 5th Cir. 2010); St. Rec. Vol. 5 of 16, 5th Cir. Opinion, 09-KA-631, 9/28/10.

[28]State v. Mathieu, 68 So.3d 1015 (La. 2011); St. Rec. Vol. 13 of 16, La. S. Ct. Writ Application, 10-K-2421, 10/27/10; La. S. Ct. Writ Application, 10-K-2421, 4/11/11; St. Rec. Vol. 5 of 16, La. S. Ct. Letter, 2010-K-2421, 10/27/10.

[29]Id., 68 So.3d at 1023.

[30]The thirtieth day fell on Sunday, July 10, 2011, leaving the final day to fall on the next business day.  Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On January 17, 2012, Mathieu submitted to the state trial court an application for post-conviction relief supported by a memorandum in which he asserted the following grounds for relief:[31] (1) He was denied effective assistance of counsel based on nineteen (19) alleged errors delineated in the memorandum.[32] (2) He was denied the right to compulsory process in that he provided his counsel and the clerk of court with a list of witnesses and no subpoenas were issued. (3) The jury was unconstitutionally empaneled because potential jurors saw him in shackles during voir dire. (4) He was denied the right

---

[31]St. Rec. Vol. 4 of 16, Uniform Application for Post-Conviction Relief, 2/3/12 (dated 1/17/12); Motion to Vacate Conviction and Sentence (treated by the state court as the memorandum in support), 2/3/12.

[32]Mathieu specifically alleged that counsel (1) failed to ascertain the facts from him; (2) failed to inform him of the nature of the charges and sentencing range; (3) failed to conduct a pretrial investigation; (4) failed to suppress his statements; (5) failed to challenge the denial of bond; (6) incorrectly informed the trial judge about prior criminal charges and that Mathieu had been informed about the sentencing range; (7) refused to represent Mathieu in a request to suppress the arrest warrant because he did not want to subpoena a judge; (8) presented incorrect argument during the motion to produce transcripts; (9) failed to inform him about the plea agreement offered on May 1, 2006; (10) refused to accept the witness subpoena list; (11) failed to obtain appointment of an investigator; (12) refused to defend him at trial; (13) failed to object to an improperly empaneled jury or preserve the error for appeal; (14) erroneously told the judge he already had granted leave for Mathieu to represent himself; (15) erroneously informed the judge that Mathieu would conduct part of the trial himself; (16) failed to request a mistrial based on the improperly empaneled jury; (17) failed to advise him that the misdemeanor charge would be tried with the felony charge, was not present when the verdict on the misdemeanor was pronounced and failed to appeal the misdemeanor charge; (18) was not present to advise him on whether to object to the trial judge's denial of his request to replay the 911 tape; and (19) failed to move for a new trial, request a presentence investigation and present mitigating evidence at the sentencing hearing.

to a fair trial based on the errors listed under the first three claims. (5) The trial judge was biased against him based on fourteen (14) grounds listed in the memorandum.[33] In connection with the fifth issue, Mathieu also filed a motion to recuse the original trial judge from the post-conviction proceedings.[34] After its re-allotment and transfer, the motion to recuse was denied by another judge.[35]

On September 25, 2012, Mathieu's application for post-conviction relief was denied upon a finding that the claim of ineffective assistance of counsel was conclusory and meritless under the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The court also barred review of the remaining claims as repetitive, citing La. Code Crim. P. art. 930.4(B), (C) for Mathieu's failure to raise the claims before or on direct appeal.[36]

---

[33]Mathieu's claims of bias were that the judge (1) denied his request for copies of transcripts in other proceedings; (2) failed to dismiss the jury venire after they saw him in restraints; (3) allowed evidence of his 2005 arrest to be admitted into evidence; (4) pronounced him guilty of a misdemeanor charge, illegal carrying of a weapon, without a trial; (5) denied the jury's request to replay the 911 tape; (6) made derogatory remarks about Mathieu; (7) failed to order a presentence investigation; (8) imposed an excessive sentence; (9) failed to provide a factual basis for the sentence; (10) failed to follow sentencing guidelines; (11) imposes excessive sentences when accused go to trial; (12) violated the Judge's Duties to the Court; (13) violated the Code of Judicial Conduct, Canons 2, 2A, 3, A3, A4; and (14) failed to recuse himself from the misdemeanor matter.

[34]St. Rec. Vol. 4 of 16, Motion to Recuse, 2/3/12 (dated 1/30/12).

[35]St. Rec. Vol. 3 of 16, Trial Court Order, 8/24/12; Minute Entry, 8/24/12; St. Rec. Vol. 4 of 16, Trial Court Order, 4/24/12; Trial Court Order, 6/14/12; St. Rec. Vol. 12 of 16, Hearing Transcript, 8/24/12; Hearing Transcript, 5/18/12.

[36]St. Rec. Vol. 4 of 16, Trial Court Order, 9/25/12.

The Louisiana Fifth Circuit subsequently found no error in either ruling and refused Mathieu's request for a rehearing.[37]  The Louisiana Supreme Court denied Mathieu's related writ application without stated reasons on November 22, 2013, and denied his request for reconsideration on January 17, 2014.[38]

## II.     FEDERAL HABEAS PETITION

On March 19, 2014, the clerk of this court filed Mathieu's petition for federal habeas corpus relief in which he asserts eight (8) grounds for relief:[39] (1) He did not make a clear and unequivocal request to represent himself at trial. (2) He did not knowingly waive his right to counsel at trial. (3) The sentence was excessive. (4) He was denied effective assistance of counsel based on the various alleged errors listed in his state application for post-conviction relief. (5) He was denied the right to compulsory process when he provided his counsel and the clerk of court with a list of witnesses and no subpoenas were issued. (6) The jury was unconstitutionally empaneled because the potential jurors saw him in shackles during voir dire. (7) He was denied the right to a fair trial based on ineffective assistance of counsel, denial of the right to compulsory process

---

[37]St. Rec. Vol. 12 of 16, 5th Cir. Order, 12-KH-919 c/w 13-KH-02, 2/26/13; 5th Cir. Order, 12-KH-919 c/w 13-KH-02, 3/15/13; Motion to Reconsider, 12-KH-919 c/w 13-KH-02.

[38]State ex rel. Mathieu v. State, 126 So.3d 475 (La. 2013); State ex rel. Mathieu v. State, 130 So.3d 335 (La. 2014); St. Rec. Vol. 12 of 16, La. S. Ct. Order, 2013-KH-0706, 11/22/13; La. S. Ct. Writ Application, 13-KH-706, 4/2/13 (dated 3/24/13).

[39]Rec. Doc. No. 1-1, pp. 6, 7.

and an improperly empaneled jury. (8) The trial judge was biased against him based on the fourteen (14) grounds listed in his state application for post-conviction relief.

In its response in opposition to Mathieu's federal petition, the State concedes the timely filing of the petition.[40] The State, addressing only seven of Mathieu's eight claims,[41] also contends that Mathieu did not exhaust state court remedies to the extent that he has expanded upon his arguments in connection with the claims of ineffective assistance of counsel and judicial bias. The State also argues that four of Mathieu's claims are in procedural default and the remaining issues are without merit.

III.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[42] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to

---

[40]Rec. Doc. No. 18.

[41]In its response, the State did not list Mathieu's claim that he was denied a fair trial, although the claim is discussed in the brief as being in procedural default. Rec. Doc. No. 18, pp. 12, 17-19. On the other hand, the State listed Mathieu's excessive sentence issue and did not discuss its disposition. <u>Id</u>., at p. 12.

[42]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

Mathieu's petition, which, for reasons discussed below, is deemed filed in this court on February 27, 2014.[43]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that the petition was timely filed. As mentioned, the State argues that two legal theories within Mathieu's ineffective assistance and judicial bias claims have not been exhausted. I disagree.

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to

---

[43]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Mathieu's petition was filed by the clerk of this court on March 19, 2014, when pauper status was granted. Mathieu's signature on the petition is dated February 27, 2014. This is the earliest date appearing in the record on which Mathieu could have submitted the pleadings to prison officials for mailing to a court.

resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). In addition, it is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The State contends that Mathieu presents a new legal theory in support of his ineffective assistance of counsel claim. Specifically, Mathieu argues to this court that his counsel was ineffective when he failed to inform Mathieu of a plea discussion held with the prosecutor and the state trial judge on May 1, 2006. He now expressly contends that if counsel had informed him of the possible plea agreement and if the plea could

have been made under <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970),[44] he would have considered accepting the offer in lieu of going to trial. Mathieu also cites certain case law, including <u>Missouri v. Frye</u>, __ U.S. ___, 132 S. Ct. 1399 (2012), to support his claim that the failure to advise him of the possible plea agreement constituted ineffective assistance of counsel. The State contends that his post-conviction application in the state courts did not include this argument.

The record reflects, however, that Mathieu argued in his state application for post-conviction relief that "[w]here defendant was deprived by ineffective assistance of counsel of opportunity to accept a plea offer, appropriate and constitutional remedy would require state to reinstate its original offer."[45] Under the broad reading that must be afforded pro se pleadings,[46] Mathieu's argument appears to have been that his counsel's failure to advise him about the possible plea agreement deprived him of the right to consider the plea and amounted to ineffective assistance. I find that this is substantially the same argument that he presents here under <u>Frye</u> and therefore satisfies

---

[44]Under <u>Alford</u>, a criminal defendant can enter and the court can accept a plea of guilty in spite of the defendant's insistence that he is innocent.

[45]St. Rec. Vol. 4 of 16, Motion to Vacate Conviction and Sentence, p. 11, 2/3/12 (treated by state court as memorandum in support).

[46]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

the exhaustion requirement. In addition, Mathieu filed his state application for post-conviction relief on February 3, 2012. The Frye opinion he now relies upon was issued on March 21, 2012. Mathieu did not have benefit of that opinion to support his initial argument. He nevertheless included Frye in his subsequent pleadings to the Louisiana Fifth Circuit and Supreme Court to support these same arguments regarding the failure of counsel to advise him of the possible plea deal.[47] Accordingly, I view this claim as exhausted.

The State also argues that, although Mathieu references his original grounds in support of the judicial bias claim, he did not exhaust two of the arguments raised in his federal petition. Specifically, the State contends that he did not exhaust his assertion that the judge misrepresented the record at the recusal hearing and expressed an opinion that Mathieu "had venom" for his ex-wife.[48] However, in his post-conviction motion to recuse, the denial of which was challenged through complete state court exhaustion, Mathieu relied upon the entire record and prior rulings to "no doubt show the bias and prejudice [of the] Judge . . . towards the petitioner."[49] He specifically referenced the alleged personal animosity in prior rulings "even more so since he was subpoenaed to

---

[47]See, e.g., St. Rec. Vol. 12 of 16, La. S. Ct. Writ Application, 13-KH-706, 4/2/13; Motion to Reconsider, 12-KH-919 c/w 13-KH-02, 4/2/13.

[48]Rec. Doc. No. 18, p. 15.

[49]St. Rec. Vol. 4 of 16, Motion to Recuse, p. 4, 2/3/12.

testify at the May 11, 2009 evidentiary hearing. . ."[50]  Mathieu has now simply added

what he believes to be more specific examples rather than a new legal theory to support

his judicial bias claim. Therefore, I do not agree that Mathieu has failed to exhaust a

portion of his judicial bias claim.

For these reasons, I cannot accept the State's failure to exhaust defense.  I will

address the State's procedural default defense as to Claim Nos. 5 - 8 and the merits of

Claim Nos. 1 - 4 as numbered above.

IV.    PROCEDURAL DEFAULT (CLAIMS NOS. 5, 6, 7 and 8)

Mathieu argues that he was denied the right to compulsory process and a fair trial,

the jury was unconstitutionally empaneled and the trial judge was biased against him.

Mathieu asserted these claims in his state application for post-conviction relief.  The state

trial court found these claims procedurally barred under La. Code Crim. P. art. 930.4(B),

(C) for failure to raise the claims in a timely manner at trial or on appeal.  The Louisiana

Fifth Circuit agreed with the application of the procedural bar to review of these claims,

and the Louisiana Supreme Court denied subsequent relief with no additional reasons.

See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment

does not indicate whether it is based on procedural default or the merits of a federal

---

[50]Id.

claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. The United States

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Walker v. Martin, __U.S.__, 131 S. Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) Beard v. Kindler, 558 U.S. 53, 60-61 (2009). The question of the adequacy of a state procedural bar is itself a federal question. Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

The last reasoned decision on these issues was the judgment of the Louisiana Fifth Circuit affirming the state trial court's reliance on La. Code Crim. P. art. 930.4(B), (C) to bar the claims that were known to Mathieu and not timely raised. Under the circumstances of his case, the provisions of Article 930.4(B) and (C) are independent and adequate to bar federal review of these claims. Bennett v. Whitley, 41 F.3d 1581 (5th Cir.1994) (Article 930.4 is an independent and adequate state procedural rule); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C)); Perez v. Cain, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct.

10, 2012) (Barbier, J.) (Article 930.4(C)); <u>Thomas v. Cain</u>, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (Article 930.4(B)); <u>Simmons v. Cain</u>, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (Article 930.4(B) and (C)); <u>Washington v. Cain</u>, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (Article 930.4(B)); <u>see also</u>, <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.

The state courts' rulings were based on Louisiana law setting forth the procedural requirements for the presentation of post-conviction claims. <u>See</u> <u>Fisher</u>, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for dismissal of Mathieu's claims were therefore independent of federal law and adequate to bar review of his claims in this court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Fisher</u>, 169 F.3d at 301 (citing <u>Coleman</u>, 501 U.S. at 748-50); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id., at 486.

In this case, Mathieu has offered no cause for the default that would excuse the procedural bar imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented Mathieu from raising these claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him or his counsel from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Mathieu presents no argument and the record contains nothing establishing his actual innocence on the underlying conviction.  For these reasons, he has failed to overcome the procedural bar to his claims, and his claims that he was denied the right to

compulsory process and a fair trial, that the jury was unconstitutionally empaneled and the trial judge biased against him must be dismissed with prejudice as procedurally barred.

V.    STANDARDS OF MERITS REVIEW OF REMAINING CLAIMS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001);  <u>Hill</u>, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington v. Richter</u>, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI. WAIVER OF COUNSEL AND SELF-REPRESENTATION (CLAIM NOS. 1 and 2)

Mathieu alleges that he was denied counsel without having made a clear and unequivocal request to represent himself and that he did not knowingly and intelligently waive the right to assistance of counsel. He also argues that the state courts failed adequately to inquire about his competence and capacity at any time during the proceedings. He contends that he never intended to represent himself, except as to the validity of the arrest warrant and his counsel's refusal to subpoena the issuing judge.

These arguments were first raised by Mathieu's counsel on direct appeal to the Louisiana Fifth Circuit.  As detailed above, on May 29, 2007, the Louisiana Fifth Circuit conditionally affirmed Mathieu's conviction and remanded the matter to the state trial court for an evidentiary hearing to determine whether Mathieu had made a clear and unequivical request to represent himself and whether the trial court made sufficient inquiries into his competency in knowingly and voluntarily making the waiver of counsel.  After some procedural delays, an evidentiary hearing was conducted on June 6, 2008, and the court found that each factor of the <u>Faretta</u> standards for valid and knowing waiver of counsel and a clear decision to represent himself were established by the record and transcripts of the various pretrial and trial proceedings.[51]

After Mathieu's second appeal, the Louisiana Fifth Circuit remanded the matter a second time for another evidentiary hearing,[52] and another evidentiary hearing was conducted on May 11, 2009.[53]  The court denied relief.[54]  Upon Mathieu's third appeal, the Louisiana Fifth Circuit reversed Mathieu's conviction and sentence, finding that the

---

[51]St. Rec. Vol. 10 of 16, Trial Court Order, 8/27/07; Trial Court Judgment, 6/6/08; Hearing Transcript, 6/6/08.

[52]<u>State v. Mathieu</u>, 8 So.3d 631 (La. App. 5th Cir. 2009); St. Rec. Vol. 11 of 16, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-747, 1/27/09.

[53]St. Rec. Vol. 11 of 16, Hearing Transcript, 5/11/09.

[54]<u>Id</u>., at p. 56.

record failed to reveal a clear waiver of counsel and a sufficient inquiry by the trial court into Mathieu's competence to do so.[55]

The Louisiana Supreme Court ultimately reversed and found that under the Faretta standards, the record as a whole supported the trial court's findings that Mathieu had knowingly and voluntarily waived his right to counsel by his actions in participating in the trial and had the capacity to do so.[56]  The Louisiana Supreme Court agreed with the state trial court that Mathieu "was capable of representing himself, he understood the nature of the charges against him, understood the range [of sentence] of the crime with which he was charged" and demonstrated this knowledge in his numerous pro se pleadings and exchanges with the court.  Mathieu, 68 So.3d 1022-23.  This was the last reasoned decision on the issue.  See Ylst, 501 U.S. at 802.

The validity of a waiver of the right to counsel and a Faretta request for self-representation is a mixed question of law and fact.  Brewer v. Williams, 430 U.S. 387, 397 & n.4, 403-404 (1977) (waiver of Sixth Amendment right to assistance of counsel is not a question of historical fact, but rather requires application of constitutional principles to facts); Miller v. Fenton, 474 U.S. 104 (1985) (voluntariness of the waiver

---

[55]State v. Mathieu, 49 So.3d 434 (La. App. 5th Cir. 2010); St. Rec. Vol. 5 of 16, 5th Cir. Opinion, 09-KA-631, 9/28/10.

[56]State v. Mathieu, 68 So.3d 1015, 1023 (La. 2011); St. Rec. Vol. 13 of 16, La. S. Ct. Writ Application, 10-K-2421, 10/27/10; La. S. Ct. Writ Application, 10-K-2421, 4/11/11; St. Rec. Vol. 5 of 16, La. S. Ct. Letter, 2010-K-2421, 10/27/10.

of a constitutional right is a mixed question of law and fact). This court must therefore determine whether the denial of relief by the state courts was contrary to or an unreasonable application of Supreme Court law.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'" Marshall v. Rodgers, __ U.S. __, 133 S. Ct. 1446, 1449 (2013) (quoting Iowa v. Tovar, 541 U.S. 77, 80-81 (2004), and citing United States v. Cronic, 466 U.S. 648, 653-654 (1984) and Gideon v. Wainwright, 372 U.S. 335, 344 (1963)). A criminal defendant, however, also has the right to self-representation; that is, to "proceed without counsel when he intelligently elects to do so." Faretta, 422 U.S. at 807; Miller v. Thaler, 714 F.3d 897, 903 (5th Cir. 2013).

The United States Supreme Court has made clear that "even assuming that self-representation might pose special trial-related difficulties, 'the competence that is required of a defendant to waive his right to counsel is the competence to waive the right, not the competence to represent himself.'" (emphasis in original) Indiana v. Edwards, 554 U.S. 164, 172 (2008) (quoting Godinez v. Moran, 509 U.S. 389, 399 (1993)). The level of competence required to waive the right to counsel is the same as that required to stand trial. Godinez, 509 U.S. at 399.

Waiver of that right must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation.  United States v. Long, 597 F.3d 720, 723 (5th Cir. 2010).   Once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a Faretta hearing to ensure that the defendant's request to proceed without counsel is knowing and voluntary.  See Faretta, 422 U.S. at 835-36; United States v. Cano, 519 F.3d 512, 516 (2008).  A Faretta warning, therefore, is required when the defendant unequivocally invokes his right to proceed on his own behalf and waives his right to counsel, either expressly or constructively.  Cano, 519 F.3d at 516; Long, 597 F.3d at 724.

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."  Tovar, 541 U.S. at 88.  The state trial court need only be convinced that the defendant "knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol."  McKaskle v. Wiggins, 465 U.S. 168, 173 (1984).  The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'"  Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

The United States Fifth Circuit Court of Appeals has addressed these issues as follows:

> The defendant's waiver of his right to counsel must be unequivocal, and it should not be inferred by the court in the absence of a clear and knowing election. <u>Brown v. Wainwright</u>, 665 F.2d 607, 610 (5th Cir. 1982) (en banc). Before accepting a waiver of counsel, the court must consider and weigh:
>> the defendant's age and education . . . and other background, experience, and conduct . . .. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant . . . and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.
>
> <u>McQueen v. Blackburn</u>, 755 F.2d 1174, 1177 (5th Cir. 1985).

<u>Miller</u>, 714 F.3d at 903.

The trial judge may look at the particular facts and circumstances of a case, "including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding," to determine whether a defendant made a knowing and intelligent waiver of counsel. <u>Tovar</u>, 541 U.S. at 88. The <u>Faretta</u> hearing and its warnings are required, however, only "when an accused manages his own defense." <u>Faretta</u>, 422 U.S. at 835. Whether the hearing is required is "dependent upon the particular facts and circumstances of the case." <u>Randolph v. Cain</u>, 412 F. App'x 654, 657 (5th Cir. 2010).

Like the court in Randolph, I find that the facts and circumstances of Mathieu's case did not invoke the need for Faretta warnings. In Randolph, the defendant was convicted in St. Tammany Parish on charges of aggravated rape and aggravated incest. Randolph had appointed counsel who conducted most of the trial. As in Mathieu's case, Randolph cross-examined two of the State's witnesses, including the victim and her mother, and made other objections during trial. Randolph raised a Faretta claim on post-conviction review, arguing that the state trial court violated Faretta when it failed to determine whether he had made a knowing and voluntary waiver of his right to counsel and allowed him to act as co-counsel. Randolph's state court post-conviction pursuits were unsuccessful.

In resolving the issue on habeas review, the United States Fifth Circuit found that, although a defendant has both the right to counsel and the right to self-representation, it was "of critical importance" to recognize that "there is no constitutional right to have both through a 'hybrid representation' scheme." (emphasis in original) Randolph, 412 F. App'x at 658 (citing McKaskle, 465 U.S. at 182). Because there is no such right, the protections discussed in Faretta did not apply to Randolph. The Fifth Circuit determined that Randolph's decision to act as "'co-counsel', not as lead counsel" invoked neither his right to proceed on his own nor a waiver of counsel, and no Faretta hearing was required. (emphasis in original) Id., at 658 (citing State v. Berry, 989 So.2d 120, 128 (La. App.

5th Cir. 2008) ("Requests that vacillate between self-representation and representation by counsel are equivocal.")).

The same is true in Mathieu's case.  As he contends, the record does not contain a clear and unequivocal request for self-representation and includes nothing more than a reference that any such request was made.  Instead, Mathieu indicated before jury selection that he had no problem with his appointed counsel representing him and that he just wanted to ask a few questions of his own.[57]

> Your Honor, I have no problem, really, with Mr. Doyle representing me, my only problem is, . . . if I was allowed to ask some questions . . . and I fell (sic) like he's missed something ...

The trial judge advised Mathieu that it would be better to write down any questions and have his lawyer check with him before dismissing any witness.  Mathieu responded, "Okay.  Well, we could go along, you know, that way, Your Honor."[58]  The attorney proceeded with voir dire and opening statements for the defense.

At the start of the next day of trial, the attorney advised the court that Mathieu wanted to conduct "portions of the trial," specifically cross-examination of the

---

[57]St. Rec. Vol. 9 of 16, Proffer Transcript, pp. 4-5, 6/12/06.

[58]Id., p. 5.

witnesses.[59]  The record reflects that the attorney advised Mathieu that "we both can't do the same issue" and that the attorney managed the trial, except in those instances when Mathieu chose to question a witness or make argument.[60]

The United States Supreme Court has indicated that these kinds of circumstances constitute acceptance of counsel's representation.

> Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.

McKaskle, 465 U.S. at 168.  The record does not reflect that Mathieu either wholly waived counsel or fully invoked his right to self-representation.  Under Faretta, a hearing on the waiver of counsel or invocation of the right to self-representation is required only "when an accused manages his own defense."  Faretta, 422 U.S. at 835.  Mathieu did not manage the whole of his defense and instead acquiesced to counsel's representation during most of the trial.

Faretta does not require a hearing under these circumstances.  Federal courts have concluded that there is no clearly established Supreme Court precedent that requires a Faretta warning in the case of any hybrid representation as in Mathieu's case.  Randolph,

---

[59]St. Rec. Vol. 9 of 16, Trial Transcript, p.4, 6/13/06.

[60]Id., p. 4-5.

412 F. App'x at 660; See Peters v. Chandler, 292 F. App'x 453, 457 (6th Cir. 2008) (Faretta hearing not required where defendant argued certain points to the court, and his counsel represented him for all other purposes); United States v. Cromer, 389 F.3d 662, 683 (6th Cir. 2004) ("Because there was no waiver, clearly and unequivocally asserted, there was no need to warn Cromer about the consequences of that waiver."); Howie v. Subia, No. 07-CV-453, 2010 WL 3784733, at 4 (E.D. Cal. Sep. 24, 2010) ("Perhaps because the Supreme Court has rejected the right to hybrid representation, it has yet to decide whether a judge has a duty to obtain a waiver of counsel from a defendant before allowing him to act as co-counsel with his attorney.  This remains an open issue; one for which no clearly established Federal law exists.")

For these reasons, Mathieu has not established that the state trial court was constitutionally required to conduct a Faretta hearing or to expound on the full panoply of rights being waived or asserted.  There is no Supreme Court precedent that would require this type of inquiry when Mathieu made no clear invocation of his right to represent himself and instead proceeded in a hybrid role or combined effort with counsel to try the case.  The state courts' denial of relief on this claim therefore was not contrary to or an unreasonable application of Faretta or any Supreme Court precedent where no such precedent exists.  Randolph, 412 F. App'x at 660.  Mathieu is not entitled to relief on this claim.

## VII.   EXCESSIVE SENTENCE (CLAIM NO. 3)

Mathieu contends that the 30-year prison sentence he received is unconstitutionally excessive because the state trial court failed to consider mitigating factors and order a pre-sentence investigation report. The Louisiana Fifth Circuit found no merit in this claim in Mathieu's first direct appeal and did not address the re-urged merits of the claim in the third appeal.

To the extent Mathieu claims that the state trial court failed to comply with state sentencing rules, he has not stated a cognizable federal habeas corpus claim. See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."). Mathieu is not entitled to federal habeas relief on that point.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp.2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2470 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997),

overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)). As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases. Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provides that a person convicted of second degree kidnapping shall be imprisoned at hard labor for not less than five (5) years or more than forty (40) years, with at least the first two (2) years to be served without benefit of parole, probation or suspension. La. Rev. Stat. § 14:44.1. Mathieu's sentence of thirty (30) years in prison with the early release restriction on the first two years was well within the statutory range. Thus, this court will consider proportionality when compared with sentences imposed in similar cases.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" Ewing, 538 U.S. at 23 (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the

level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

In Mathieu's case, the state trial court considered factors including Mathieu's criminal background in spite of his first offender status, the use of a weapon to threaten his ex-wife, his failure to accept responsibility and the likelihood of continued criminal behavior.  A survey of the limited number of Louisiana cases in the public domain establishes that Mathieu's sentence was not out of line with sentences imposed upon similarly situated defendants who used a weapon to threaten the victim.  See, e.g., State v. Brown, 956 So.2d 53 (La. App. 2nd Cir. 2007) (20-year sentence imposed on 19 year old first offender who used a gun to threaten victims); State v. Taves, 861 So.2d 144 (La. 2003) (25 years in prison not excessive for defendant who used a gun throughout the kidnapping). State v. Hawkins,740 So.2d 768, 771 (La. App. 5th Cir. 1999) (30-year sentence imposed on first-offender with some prior criminal background); State v. Washington, 670 So.2d 1255 (La. App. 5th Cir. 1996) (40-year sentence imposed where defendant had a gun during kidnapping).

Mathieu has not shown that his sentence was grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana.  The state courts' denial of relief on this issue was

neither contrary to established Supreme Court case law nor an unreasonable application of Supreme Court precedent.  Mathieu is not entitled to relief on this claim.

VIII.   EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 4)

Although not listed in his federal petition, Mathieu urges the court to consider the same nineteen (19) grounds raised in the state courts to support his claim that his trial counsel provided ineffective assistance.  The State contends that Mathieu cannot assert an ineffective assistance of counsel claim because he waived assistance of counsel at trial.  As discussed above, Mathieu's hybrid representation did not constitute waiver of counsel. Like the state courts, I will therefore consider his ineffective assistance of counsel arguments.

During state court post-conviction proceedings, Mathieu identified the following errors allegedly made by his trial counsel:[61]  (1) failure to ascertain from him the facts leading to the charge; (2) failure to inform him of the nature of the charge and sentencing range during plea negotiations; (3) failure  to conduct pretrial investigation; (4) failure to suppress part of his pretrial statement; (5) failure to pursue writs in the appellate court from the denial of bond; (6) erroneously informing the state trial court that the prior criminal charges involved the same parties and that Mathieu was informed of the sentence exposure; (7) refusal to move to suppress the arrest warrant because a judicial

_____

[61]St. Rec. Vol. 4 of 16, Motion to Vacate Conviction and Sentence, 2/3/12 (treated by state court as memorandum in support).

officer would be subpoenaed; (8) incorrectly informing the court that transcripts of the prior incident were not relevant; (9) failure to inform petitioner of a plea agreement counsel discussed with the prosecutor and the state trial court on May 1, 2006; (10) refusal to issue subpoenas and informing petitioner he would be representing himself; (11) failure to follow through with the appointed investigator; (12) refusal of petitioner's subpoena list; (13) allowing the jury to be unconstitutionally impaneled without preserving the error for the record; (14) erroneously informing the judge that petitioner's motion to represent himself was granted; (15) erroneously informing the judge that petitioner would conduct part of the trial himself; (16) failure to move for a mistrial when the first witness was called before the wrongly impaneled jury; (17) failure to inform petitioner that the separate misdemeanor charge would be tried with the felony charge, absence when judge handed down the guilty verdict for the misdemeanor, and failure to appeal the misdemeanor conviction; (18) failure to advise petitioner when the jury asked for the state trial court to replay the 911 tape during deliberations; and (19) failure to request a new trial and presentence investigation or present mitigating factors at sentencing.

The state trial court found that these claims were conclusory and failed to establish either prong of the <u>Strickland</u> test. The Louisiana Fifth Circuit agreed and the Louisiana Supreme Court denied relief without further comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 688, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Id., 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under

Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington, 131 S. Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential."  Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable

professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Strickland, 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Mathieu's list of alleged errors by his counsel provides no underlying basis for the court to assess the validity of counsel's action or any prejudice that may have resulted. I agree with the state courts that the claims are wholly conclusory and fail to present any basis to support a claim under Strickland. It is well settled that conclusory allegations are not adequate to establish ineffective assistance of counsel. See Green v. Johnson, 160

F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); United States v. Daniels, No. 08-104, 2011 WL 999529, at *7 (E.D. La. Mar. 18, 2011) (citing Moawad, 143 F.3d at 948; Brown, 419 F.3d at 375; and Kron v. Tanner, No. 09-7572, 2010 WL 3488227, at *11 n.26 (E.D. La. May 4, 2010)).

Nevertheless, in an effort to afford some consideration to his claims, I find that Mathieu's list can be categorized in five general areas alleging that counsel failed to (a) investigate/prepare for trial, (b) advise him of plea related matters, (c) move to suppress or object to certain evidence and errors including jury selection, (d) pursue review of state trial court rulings, and (e) provide the state trial court with correct information.

In the first category, Mathieu indicates that counsel failed to investigate and examine the facts underlying the charge or follow through with the investigator[62] and refused to issue subpoenas he requested. "'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad, 143 F.3d at 948; Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). A petitioner cannot show prejudice as to a claim that his counsel failed

---

[62]The record reflects that defense counsel hired an investigator through the public defender's office to meet with Mathieu. St. Rec. Vol. 10 of 16, Hearing Transcript, p. 36, 4/11/06.

to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown, 419 F.3d at 375; Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Mathieu in no way meets this standard. He has identified no exculpatory evidence that would have been discoverable through more pretrial investigation by counsel. As in the state courts, this argument that counsel was unprepared is wholly conclusory and unsupported by the record. The record confirms that the public defender's office, including his appointed attorney, more than adequately prepared for each phase of the proceedings and that Mathieu was provided with copies of the State's discovery responses to assist in the preparation for trial, as he requested. Counsel assured that an investigator was hired to assist Mathieu to pursue his own theories. Mathieu offers nothing to establish that trial counsel was not prepared to proceed with trial or that any further investigation by counsel or the investigator would have disclosed any material information.

The state court record reflects that counsel assisted Mathieu in meaningfully challenging the State's evidence both before and during trial through relevant motions and argument. Counsel conducted voir dire and gave opening statements. He assisted Mathieu in cross-examination of the State witnesses, especially when Mathieu had difficulty. Counsel himself cross-examined Sergeant Kelly Jones, who provided crucial testimony regarding the statements of Mathieu and the victim. Counsel also scrutinized the jury charges and entered the necessary challenges to the language. Mathieu has not shown any errors in these actions that demonstrate a lack of preparation or constitute deficient performance by counsel.

As for the failure to issue subpoenas, Mathieu again fails to provide any relevant information. Counsel was charged with preparing for trial and pursuing a viable defense strategy. He necessarily made strategic calls on which witnesses were material to the defense. "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed

testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

Mathieu has not met this burden. He has not identified any particular witness nor indicated that any such witness would testify relevantly and favorably to the defense. Thus, Mathieu has not shown deficient performance or prejudice resulting from counsel's failure to subpoena witnesses.

In the next category, Mathieu contends that his counsel failed adequately to advise him regarding plea negotiations. Under Strickland, when a petitioner contends that his counsel failed properly to negotiate a favorable plea, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376, 1385 (2012). The Supreme Court has made clear, however, that "a defendant has no right to be offered a plea . . . nor a federal right that the judge accept it." (citations omitted) Missouri v. Frye, __ U.S. __, 132 S. Ct. 1399, 1410 (2012).

The Supreme Court in <u>Frye</u> held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Frye</u>, 132 S. Ct. at 1408. In the companion case of <u>Lafler</u>, the Supreme Court specifically addressed assistance of counsel when there is a rejected plea offer:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

<u>Lafler</u>, 132 S. Ct. at 1387.

The record reflects that a pretrial hearing was held on March 30, 2006, at which Mathieu was present.[63] The judge asked defense counsel if he talked with Mathieu about "our" plea discussions.[64] Doyle responded that he had informed Mathieu "of the range of what the sentence carries which [the judge] is willing to do."[65] At a subsequent hearing on April 11, 2006, the state trial court inquired about the status of the proposed plea deal

---

[63]St. Rec. Vol. 10 of 16, Hearing Transcript, pp. 8, 9, 10, 3/30/06.

[64]<u>Id</u>., p. 7.

[65]<u>Id</u>.

that would allow him to consider a minimum sentence before hearing motions.[66] Mathieu emphatically rejected the offer on the record.[67]

On May 1, 2006, when Mathieu was not present, defense counsel spoke off the record with the state trial judge and the prosecutor about a possible plea agreement.[68] Although the details were not placed on the record, counsel indicated he would convey the plea offer to Mathieu.[69] This is the only specific mention of that plea offer appearing in the pretrial state court record.

As Mathieu concedes, the record indicates that additional plea discussions were conducted. Mathieu indicated in his later-filed motion to reconsider the sentence that additional plea discussions were held on the morning of trial on June 12, 2006.[70] At that time, he was told that if he did not accept the five (5) year minimum sentence, the court would impose at least a twenty (20) year sentence after trial, if he was convicted. This discussion also is not mentioned or transcribed in the trial transcript. However, during the hearing on the motion to reconsider held on September 28, 2006, Mathieu acknowledged to the court that "[he] was offered a minimum sentence if [he] pleaded

---

[66]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 14, 4/11/06.

[67]Id., p. 15.

[68]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 4, 5/1/06.

[69]Id., at p. 5.

[70]St. Rec. Vol. 8 of 10, Motion to Reconsider Sentence, 7/12/06.

guilty."[71]  Mathieu stated that he "refused to plead guilty due to the fact [he] wasn't guilty of what [he] was charged with."[72]  He also stated that he knew he was facing at least twenty (20) years in prison if he rejected the State's plea offers and went to trial.[73]

The record and Mathieu's concessions reflect that he was advised by counsel about the on-going plea negotiations and knew the sentencing range he faced for the charge of second degree kidnapping.  He also knew that he faced a significantly greater sentence if he rejected the plea offers from the State and proceeded to trial.  Even assuming, without deciding, that counsel did not clearly advise him of the plea offered on May 1, 2006 (a fact not proven by Mathieu), Mathieu did not and still has not established that he would have accepted that plea agreement or any deal in lieu of going to trial.  Instead, he indicates only that he would have considered the plea if offered under Alford.  There is no indication, only Mathieu's speculation, that any plea would have been offered under Alford.

Mathieu chose to reject an offer of a minimum sentence before May 1, 2006, and later rejected the plea proposal discussed with him on the morning of trial on June 12, 2006.  He made clear at the hearing on his motion to reconsider the sentence that he did

---

[71]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 2, 9/28/06.

[72]Id.

[73]Id., pp. 2-3.

not plead guilty because he was not guilty of the crime charged. Mathieu has not established that he was prejudiced by counsel in connection with the plea offers made to him before trial.

Mathieu also claims that his counsel was deficient in failing to suppress his statements and the arrest warrant. Counsel in fact urged and argued for Mathieu the motions to suppress the statement and the arrest warrant based on Mathieu's belief that he was not properly advised of his rights and that the affidavit supporting the warrant was false. The state trial court conducted a full hearing on the motions on April 11, 2006.[74] The court denied the motion to suppress, finding that Mathieu had been advised of his rights before making the statement.[75] After hearing additional testimony, the court also held that the affidavit contained no substantive errors, only an incorrect item number at the top of the page.[76]

Mathieu has not shown that counsel acted unreasonably in failing further to contest the statement or the affidavit. The motions to suppress were submitted to the court and were found meritless. Counsel does not act deficiently in failing to urge, or in this case re-urge, a meritless argument. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th

---

[74]St. Rec. Vol. 10 of 16, Hearing Transcript, 4/11/06.

[75]Id., p. 28.

[76]Id., p. 32-33.

Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). There was nothing more required of counsel. See <u>United States v. Gibson</u>, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless motions").

Mathieu also complains that his counsel allowed the jury to be unconstitutionally impaneled without objecting or moving for a mistrial. Mathieu's state court post-conviction pleadings reflect that this claim is based on Mathieu's contention that several of the selected jurors and a panel of prospective jurors may have seen him in shackles.[77] Mathieu concedes that his counsel participated in at least two bench conferences concerning the incident and the defense's motion to excuse the tainted jurors and the panel members was denied.[78] Counsel told Mathieu that the court denied the motion and that the issue could be asserted on appeal.[79] Mathieu urged this same argument in his motion for post-verdict judgment of acquittal to no avail.

---

[77]St. Rec. Vol. 4 of 16, Motion to Vacate Conviction and Sentence, p. 5, 2/3/12.

[78]<u>Id</u>.

[79]<u>Id</u>.

The Supreme Court has long recognized the defendant's general right to appear before the jury free from shackles or other restraints, unless there is an established security need. Holbrook v. Flynn, 475 U.S. 560 (1986); Illinois v. Allen, 397 U.S. 337, 343 (1970); Bigby v. Cockrell, 340 F.3d 259, 277-78 (5th Cir. 2003); Lockhart v. Johnson, 104 F.3d 54, 57 (5th Cir. 1997). In this case, however, Mathieu concedes that counsel challenged the incident and moved for dismissal of the jurors, albeit it unsuccessfully. Counsel is not deficient simply because his efforts are unsuccessful. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted). Mathieu is not entitled to relief on this point.

Mathieu next complains that his counsel was not present to advise him when the jury asked to review the 911 tape during deliberations.[80] The transcript does not reflect who was in the courtroom when the court received the question from the jury. The judge advised those in attendance that he believed he was not allowed to replay the tape because it was testimony and the jury would have to rely on their memories. Both Mathieu and the prosecutor indicated they had no objections.

---

[80]St. Rec. Vol. 9 of 16, Trial Transcript, p. 181, 6/13/06.

Mathieu does not indicate what advice counsel could have offered him or how any additional advice from counsel would have altered the court's decision. Under La. Code Crim. P. art. 793, "a juror must rely upon his memory in reaching a verdict" and "[t]estimony shall not be repeated to the jury." Louisiana law did not require the court to allow the jury to listen to the 911 tape again during their deliberations. Thus, even assuming that his counsel was not present in the courtroom during this exchange, Mathieu has failed to establish any resulting prejudice.

Mathieu also alleges that his counsel erred in failing to move for a new trial, request a presentence investigation report or present mitigating evidence at sentencing. The record reflects that Mathieu filed his own post-verdict motions, which the court denied before sentencing.[81] Mathieu has presented no basis for his counsel to have filed a motion for new trial or that any such motion had any chance to be successful.

Under Louisiana law, "the trial court may request a presentence investigation, but a defendant has no right to demand that the court order one." State v. Hollins, 964 So.2d 422, 425 (La. App. 4th Cir. 2007); State v. Divine, 738 So.2d 614, 621 (La. App. 5th Cir. 1999) (same); State v. Keleman, 444 So.2d 1328, 1332 (La. App. 2nd Cir. 1984) (a presentence investigation report may be ordered by the court but is not a right of the

_____

[81]St. Rec. Vol. 10 of 16, Sentencing Transcript, 6/29/06.

accused and is not mandatory). Mathieu has presented no reason for counsel to have requested a presentence investigation in his case.

Contrary to Mathieu's arguments, counsel urged the trial court to consider a lesser sentence based on Mathieu's status as a first offender. When Mathieu offered other considerations to the court in his motion to reconsider the sentence, the state trial court readily rejected them as a basis to reduce the sentence. Mathieu has not pointed to any other mitigating factors that could have been presented or that would have lessened his sentence. He therefore has not established any prejudice from counsel's failure to do so, especially where there was no basis for counsel to have done so. See Martinez, 99 F. App'x at 543.

The same is true of Mathieu's contention that his counsel was deficient when he failed to seek review of the state trial court's denial of his request to be released on bond. Mathieu has not offered any supporting argument on this point. The record demonstrates that all of Mathieu's attempts to obtain release on bond, both before and after trial, were rejected by the state trial and appellate courts. He has shown nothing that would indicate that counsel's efforts would have been any more successful when the state courts repeatedly found no legal or factual basis for his release.

Mathieu also argues that counsel was deficient when counsel failed to advise him that the separate misdemeanor weapons charge would be tried at the same time as the

kidnapping felony charge. He also argues that counsel was absent when the state trial court handed down the guilty verdict for the misdemeanor and did not appeal the misdemeanor conviction.

Obviously, what counsel and Mathieu may have discussed together in private is not reflected in the record. The record does reflect, however, that Mathieu was at the pretrial hearings at which discovery and the trial date were discussed. Mathieu repeatedly submitted pretrial pleadings and motions for speedy trial, in which he addressed all of the charges jointly, including the stalking charge which was later dismissed. Mathieu was clearly aware that the charges were proceeding on a common path to a single trial. The record does not support a finding that Mathieu was unaware that the court would consider the common evidence at the single trial to dispose of the misdemeanor charge.

The record does not identify who was present in the courtroom at the time the judge took the bench when the verdict on the misdemeanor was handed down by the court. In one continuance exchange, the court pronounced the verdict on the misdemeanor and the jury was immediately brought in to announce the verdict on the felony. The transcript reflects that Mathieu and his counsel were present to respond to

the court when the verdicts were read.[82]  Mathieu has not indicated how any of this may have prejudiced his defense or altered the verdicts that were read.

Mathieu is flatly incorrect in asserting that his lawyer did not appeal the misdemeanor verdict.  Counsel moved for appeal of that verdict at the sentencing hearing held on June 29, 2006.[83]  Mathieu is not entitled to relief on this issue.

Mathieu also contends that his counsel incorrectly informed the state trial court that transcripts of his prior criminal proceedings were not relevant. In an effort to emphasize Mathieu's first offender status, counsel addressed the court with respect to his prior criminal charge of aggravated battery, on which he was acquitted.  The charge involved Mathieu's ex-wife and her boyfriend at the time.  Counsel referenced them as "the same parties."[84]  Counsel also later advised the court that, while Mathieu sought copies of the transcript from that prior trial, he and the prosecutor "believe this is irrelevant to his case."[85]  Counsel nevertheless argued each of Mathieu's points regarding the perceived need for the transcript to impeach the victim and consulted with Mathieu during the argument to the court.[86]  The state trial court acknowledged that Mathieu could

---

[82]St. Rec. Vol. 9 of 16, Trial Transcript, p. 180-81, 6/13/06.

[83]St. Rec. Vol. 10 of 16, Sentencing Transcript, p. 10, 6/29/06.

[84]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 7, 3/30/06.

[85]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 6, 4/11/06.

[86]Id., at p.6-7, 11-14.

accomplish the impeachment through questioning at trial and that he might be entitled to part of the transcript. However, the court denied the motion because Mathieu requested and did not need the <u>whole</u> trial transcript.

Mathieu has not shown any deficiency in his lawyer's statements or performance with regard to the transcript issue. Counsel exercised his professional judgment and his clearly strategic decision to emphasize Mathieu's first offender status regarding the need for the transcript. He presented Mathieu's reasoning to the court, although he ultimately was unsuccessful. Again, lack of success does not render his performance deficient or unreasonable. <u>See</u> <u>Martinez</u>, 99 F. App'x at 543.

Mathieu also argues that his counsel erred when he told the state trial court that it had granted a motion for Mathieu to represent himself and that Mathieu would conduct part of the trial himself. The years of state court appeals in Mathieu's case contain no written or express motion from Mathieu for self-representation or a clear ruling on any such motion by the court. In that instance, it might be that his counsel overstated the record. Any such error, however, does not rise to the level of constitutionally ineffective assistance because Mathieu's rights were fully protected and he was able to accomplish his clearly expressed desire to question his ex-wife himself and still retain the assistance of competent counsel throughout the pretrial and trial proceedings. He has shown no prejudice caused by counsel's statement.

Counsel told the court <u>before</u> trial that Mathieu wanted to be able to question witnesses himself.[87]  This was <u>not</u> incorrect.  Mathieu told the court that he wanted to ask questions himself in areas he felt his lawyer was not prepared to address.[88]  Mathieu ultimately agreed to allow his counsel to represent him subject to his consultation and input before witnesses would be released from questioning.[89]  In furtherance of this agreement, counsel selected the jury and delivered the opening statement for the defense.

On the second day of trial, Doyle announced to the court that Mathieu had decided that he wanted to cross-examine the witnesses himself.[90]  Mathieu answered "yes" when the state trial court questioned if this was what he wanted to do.[91]  Mathieu never said that he did not want to cross-examine the witnesses, nor did he advise the court that counsel was incorrect.  His contention now that counsel erred in telling the court that Mathieu wanted to participate in the questioning of witnesses is contradicted by the record.

For all of the foregoing reasons, Mathieu has not met either prong of the <u>Strickland</u> test with regard to the assistance provided by his trial counsel.  He has not

---

[87]St. Rec. Vol. 9 of 16, Proffer Transcript, p. 4, 6/12/06.

[88]<u>Id</u>.

[89]<u>Id</u>., p. 4-5.

[90]St. Rec. Vol. 9 of 16, Trial Transcript, p. 4, 6/13/06.

[91]<u>Id</u>.

established that the state courts' denial of relief was contrary to or an unreasonable application of <u>Strickland</u> or its progeny. He is not entitled to relief on this issue.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Mathieu's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[92]

New Orleans, Louisiana, this _____1st_____ day of October, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[92]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.